UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X

JACQUELINE D. CREEKS,                  :
                                       :    Case No.: _____
            Plaintiff,                 :
                                       :    DEMAND FOR JURY TRIAL
      -against-                        :
                                       :
AROTECH CORPORATION, JON B. KUTLER,    :
KENNETH W. CAPPELL, LAWRENCE F.        :
HAGENBUCH, JAMES J. QUINN, DEAN M.     :
KRUTTY, and KELLI L. KELLAR,           :
                                       :
            Defendants.                :
                                       :
--------------------------------------- X

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Jacqueline D. Creeks, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Arotech Corporation ("Arotech" or the "Company")  and the members of the Company's board of directors and executive officers (collectively referred to as the "Board" or the "Individual Defendants" and, together with Arotech, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Arotech by the affiliates of Greenbriar Equity Group, L.P. ("Greenbriar").

2.      On September 22, 2019, Arotech entered into an agreement and plan of merger (the "Merger Agreement") with Argonaut Intermediate, Inc., a Delaware corporation ("Parent"), and Argonaut Merger Sub, Inc., a Delaware corporation and direct, wholly-owned subsidiary of Parent ("Merger Sub"). Pursuant to the Merger Agreement, Merger Sub shall merge with and into the Company, with the Company surviving as a wholly-owned subsidiary of Parent (the "merger"). Parent and Merger Sub are each controlled by investment funds affiliated with Greenbriar, a private equity firm.

3.      Upon completion of the merger, Arotech stockholders will be entitled to receive $3.00 in cash per share of common stock (the "Merger Consideration").

4.      On October 23, 2019, in order to convince Arotech public common stock shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) critical financial projections; and (ii) the valuation analyses performed by B. Riley.

6.      The special meeting of Arotech's stockholders to vote on the Proposed Transaction will be scheduled soon since the Proposed Transaction is set to close in the first quarter of 2020 (the "Shareholder Vote").  Therefore, it is imperative that the material information which has been omitted from the Proxy is disclosed prior to the Shareholder Vote, so that Arotech's stockholders can properly exercise their corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed

Transaction unless and until the material information discussed below is disclosed to Arotech's public common shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Arotech's common stock trades on the Nasdaq, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Arotech common stock.

12.     Defendant Arotech is a public company incorporated under the laws of Delaware with principal executive offices located in Ann Arbor, Michigan. Arotech's common stock is traded on the Nasdaq under the ticker symbol "ARTX".

13.     Defendant Jon B. Cutler is, and has been at all relevant times, a director of the Company and Chairman of the Board.

14.     Defendant Kenneth W. Cappell is, and has been at all relevant times, a director of the Company.

15.     Defendant Lawrence F. Hagenbuch is, and has been at all relevant times, a director of the Company.

16.     Defendant James J. Quinn is, and has been at all relevant times, a director of the Company.

17.     Defendant Dean M. Krutty is, and has been at all relevant times, President and Chief Executive Officer of the Company.

18.     Defendant Kelli L. Kellar is, and has been at all relevant times, Vice President of Finance and Chief Financial Officer of the Company.

19.     The defendants identified in paragraphs 13 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Arotech, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    Background and the Unfair Proposed Transaction**

20.    Greenbriar is a private equity firm with over $3.5 billion of committed capital focused on investing in manufacturing and services businesses; sectors of particular focus include aerospace and defense, industrial and business services, transportation and logistics, and specialty manufacturing.

21.    Arotech is a defense and security products and services company. It manufactures and designs products for military and non-military air and ground vehicles; interactive simulation for military, law enforcement and commercial markets, and batteries and charging systems for the military. Arotech operates through two major business divisions: interactive simulation for military, law enforcement and commercial markets, and batteries and power systems for the military.

22.    The Company was formerly known as Electric Fuel Corporation and was incorporated in Delaware in 1990. The Company is based in Ann Arbor, Michigan. On September 17, 2003, the Company changed its name to Arotech Corporation.

23.    Arotech became a public company in 1992 under the name Electric Fuel Corporation, and the initial public offering of common stock occurred in February of 1994.

24.    Since going public, the Company has experienced tremendous growth and success. Indeed, on August 7, 2019 – just few weeks before the Company announced the acquisition by Greenbriar – the company issued a press release entitled *Arotech Reports Second Quarter 2019 Results*, which stated in part:

> "Our second quarter financial results showed expected improvement over the first quarter, as all three of our subsidiaries delivered improved revenues and earnings," commented CEO Dean Krutty. "We expect continued improvement as the year progresses due to the timing of programs we have

under contract, especially as it relates to our large contracts in the Simulation Division."

"Our Simulation Division's military vehicle segment has made important progress in the first two quarters toward year end test milestones for the US Army and U.S. Marine Corps programs that will allow us to transition to production and delivery phases.  Also within the Simulation Division, we are seeing significant demand for our weapon simulation software in 2019, which further validates this important simulation segment."

"The Power Division continues to make progress in selling test quantities of our new lithium based, lead acid replacement batteries. Our batteries are testing well in a variety of applications and we look forward to our customers transitioning to purchases of production quantities as their confidence grows. In addition, we continue to respond to international tenders for new battery developments that we believe will lead to further diversification in the customer base of our Israeli power subsidiary," concluded Mr. Krutty.

25.    Therefore, the Proposed Transaction comes at a time when the Company's recent and future success was not fully reflected by its share price. Revenues for the second quarter of 2019 were $23.3 million, compared to $21.9 million for the corresponding period in 2018, an increase of 6.4%. The Proposed Transaction will cash-out Arotech's stockholders at a price that fails to adequately compensate them for the intrinsic value of their shares and provides unique benefits to the Individual Defendants. Including Defendant Kutler, in his capacity as the beneficial owner of 1,887,897 shares of Arotech common stock, representing approximately 7.1% of the shares outstanding as of September 22, 2019.

26.    Despite Arotech's intrinsic value and exceptional growth prospects, the Individual Defendants have agreed to sell the Company and deprive its stockholders of the ability to partake in the Company's future growth. The Individual Defendants have breached their fiduciary duties to the Company's stockholders by agreeing to the Proposed Transaction for the unfair Merger Consideration.

**B.**    **The Proposed Transaction**

27.    On September 23, 2019, Arotech issued a press release announcing the Proposed

Transaction, which stated in relevant part:

### Arotech to be Acquired by Greenbriar for $3.00 Per Share in Cash

ANN ARBOR, Mich., Sept. 23, 2019 (GLOBE NEWSWIRE) -- Arotech
Corporation (NasdaqGM: ARTX) today announced that it has entered into a
definitive agreement with an affiliate of Greenbriar Equity Group, L.P.
("Greenbriar") under which the affiliate will acquire all outstanding shares of
Arotech common stock for $3.00 per share in cash, representing an aggregate
equity value of approximately $80.8 million.

The $3.00 per share cash consideration represents a premium of
approximately 32.7% to Arotech's closing share price on September 20,
2019, the last full trading day before today's announcement. The transaction,
which was unanimously approved by Arotech's Board of Directors upon
recommendation by a Special Committee of the Board, is expected to close
in the first quarter of 2020. Following completion of the transaction, Arotech
expects it will remain headquartered in Ann Arbor, MI.

**Transaction Details**

Under the terms of the merger agreement, Arotech's Board of Directors, with
the assistance of its financial advisor, will conduct a 30-day "go-shop"
process following the date of the announcement of the merger agreement,
during which it will actively initiate, solicit, facilitate, encourage and evaluate
alternative acquisition proposals, and potentially enter into negotiations with
any parties that offer alternative acquisition proposals. Arotech will have the
right to terminate the merger agreement to accept a superior proposal, subject
to the terms and conditions of the merger agreement. There can be no
assurance that this "go-shop" process will result in a superior proposal or that
any other transaction will be approved or completed, and Arotech does not
intend to disclose developments with respect to the solicitation process unless
and until its Board of Directors makes a determination requiring further
disclosure.

The proposed transaction is subject to, among other customary closing
conditions, approval by the holders of a majority of the shares of Arotech
common stock. There are no financing contingencies contemplated under the
terms of the merger agreement. Following completion of the transaction,
Arotech will become a privately-held company and shares of Arotech's
common stock will no longer be listed on any public market.

**Advisors**

B. Riley FBR, Inc. is serving as exclusive financial advisor to Arotech, and Lowenstein Sandler LLP is serving as legal counsel. Kirkland & Ellis LLP is serving as legal counsel to Greenbriar.

28.    Rather than continuing to build upon Arotech's improving prospects, the Merger Consideration being offered to Arotech's public stockholders in the Proposed Transaction is unfair and inadequate because, *inter alia*, the intrinsic value of Arotech's common stock is materially in excess of the amount being offered given the Company's recent financial improvement and its prospects for future growth and earnings.

**C.    The Proxy Omits Certain Material Information**

29.    On October 23, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC. The Shareholder Vote is forthcoming. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

**i.    The Proxy Contains Materially Misleading Statements and Omissions Concerning Company Projections**

30.    The Proxy fails to fully disclose Arotech's financial projections, specifically it fails to disclose unlevered free cash flows, line item projections composing EBITDA projections, and reconciliations of non-GAAP (generally accepted accounting principles) metrics to comparable GAAP metrics.

31.    The Proxy provides several non-GAAP financial metrics for Arotech—but fails to disclose the line-item projections for the specific metrics, adjustments, and/or inputs that are

used to calculate these non-GAAP measures to the most directly comparable GAAP financial measure, such as Net Income. *See* Proxy at 37. Even while reporting projections of EBITDA, the Proxy fails disclose the line-item projections consisting of: (i) earnings; (ii) interest; (iii) taxes; (iv) depreciation; and (v) amortization and stock-based compensation. *Id.*

32.     The failure to disclose the line-item projections which compose EBITDA renders the Proxy materially incomplete and misleading because non-GAAP numbers are inherently misleading. Contrary to GAAP metrics, non-GAAP figures are not standardized and, consequently, can be manipulated and easily taken out of context. Since non-GAAP measures such as EBITDA, can be measured in different ways, it is inherently misleading when it is not viewed in context with GAAP figures, such as Net Income or Operating Income, or reconciled alongside its line-item inputs.

33.     In point of fact, the Proxy itself concedes that non-GAAP metrics should be considered in context with GAAP figures and line-item inputs. "Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP and non-GAAP financial measures as used by the Company may not be comparable to similarly titled GAAP measures in the Company's historical financial statements or similarly titled amounts used by other companies." *Id.* Numerous courts have championed the importance of management-based financial projections because a company's management has unique insight into their firm's future that the market does not. Stockholders cannot hope to replicate management's inside view of a company's prospects. The established case law shows the importance (and, hence, materiality) of financial projections to stockholders' decision-making. *See Azar v. Blount Int'l, Inc.*, No. 3:16-cv-483-SI, 2017 U.S. Dist. LEXIS 39493 at *16 (D. Or. Mar. 20, 2017).

34.     The Proxy also fails to disclose the projected unlevered free cash flows. The projected unlevered free cash flows are material to shareholders as they are a critical metric when evaluating a company. Indeed, B. Riley utilized the projected unlevered free cash flows provided by management in creating their *Discounted Cash Flow Analysis*—a critical analysis when providing their opinion regarding the fairness of the Merger Consideration. *See* Proxy at 33-34. One of the most influential books ever to come out on investing, written by professors Benjamin Graham and David Dodd of Columbia Business School, states that as to free cash flows:

> Most value investors today analyze free cash flow. This is the cash generated annually from the operations of a business after all capital expenditures are made and changes in working capital are considered. Investors have increasingly turned to [free cash flows] because reported earnings can be an accounting fiction, masking the cash generated by a business or implying positive cash generation when there is none. Today's investors have rightly concluded that following the cash—as the manager of a business must do—is the most reliable and revealing means of assessing a company.

Benjamin Graham & David L. Dodd, *Securities Analysis 6th Edition*, xxx (2008).

35.     The absence of unlevered free cash flow projections, GAAP metrics, and line-item projections composing EBITDA within the Proxy, but the inclusion of other projections, renders statements made as to all financial projections misleading to shareholders. "Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up." *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1125 (8th Cir. 2019) (citing *Mendell v. Greenberg*, 927 F.2d 667, 670 (2d Cir. 1990)). In this case, only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. This must be the case as financial projections may easily be manipulated in order to fit a narrative. Consequently, regarding future events, uncertain figures, and other "soft" information, a company may choose either to remain silent or speak with full and comprehensive veracity—but it may not

provide half-truths.

    **ii.**    **The Proxy Contains Materially Misleading Statements and Omissions Concerning B. Riley's Fairness Opinion**

    36.    Second, the Proxy describes B. Riley's fairness opinion and valuation analyses performed in support of its opinion. Defendants concede the materiality of this information in citing B. Riley's fairness opinion among the factors the Board considered in making its recommendation to the Company's shareholders. *See* Proxy at 25-27. However, the summary of B. Riley's fairness opinion and analyses fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Arotech's shareholders are unable to fully understand these analyses, and thus are unable to determine what weight, if any, to place on B. Riley's fairness opinion in determining how to vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Arotech's shareholders.

    37.    With respect to B. Riley's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the following key components used in the analysis: (i) the projected terminal values of the company; (ii) the inputs and assumptions underlying the calculation of the discount rate range of 14.0% to 16.0%; (iii) the assumptions behind applying exit multiples from 9.5x to 10.5x.  *See* Proxy at 33-34.

    38.    As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow ("DCF") analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.* As Professor

Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars… This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

39.     Without the above-mentioned information, Arotech's stockholders cannot evaluate for themselves the reliability of B. Riley's *Discounted Cash Flow Analysis*, and make a meaningful determination of whether the implied per share equity value reference ranges reflect the true value of the Company or was the result of B. Riley's unreasonable judgment, and so cannot make an informed decision regarding whether to vote in favor of the Proposed Transaction.

40.     With respect to the *Premiums Paid Analysis* conducted by B. Riley, the Proxy discloses that "a total of 1,553 transactions were analyzed, 723 of which involved small-cap transactions (defined as transactions with a deal value of less than $500 million)." *Id.* at 34. However, while the mean and median values are disclosed, the low and high premiums are omitted. It also fails to disclose the actual premiums paid in those transactions observed by B. Riley. For the reasons stated above, this information is material to shareholders in evaluating the fairness of the Merger Consideration and so whether to vote in favor of the merger.

41.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure

of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

45.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

46.     Defendants have issued the Proxy with the intention of soliciting the Company's

common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) critical financial projections; and (ii) the valuation analyses performed by B. Riley.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

48.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that B. Riley reviewed and discussed its financial analysis with the Board, and further states that the Board considered the financial analysis provided by B. Riley, as well as the fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual

Defendants were required to, separately, review B. Riley's analysis in connection with their receipt of the fairness opinions, question B. Riley as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

49.      The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

50.      Arotech is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

51.      The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

52.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Arotech within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Arotech, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

56.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 30, 2019               **MONTEVERDE & ASSOCIATES PC**

   */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*